Pirani *vs.* Barden.

---

## PIRANI *vs.* BARDEN.

At common law, replevin was a remedy which would not lie, unless there had been a wrongful taking.

The plaintiff, in replevin *detinet*, under our statute, *must* adopt the form of declaring prescribed by the statute; and allege a receipt of the poperty by the defendant from the plaintiff, or some other person, to be delivered to the plaintiff, and refusal to re-deliver.

No doubt replevin, in the *detinet*, under our statute, will lie in cases of deposite, lending, hiring, pawn and pledge, and the like; but *quere* whether it extends to the case of an innocent purchaser, who bought for a valuable consideration, without knowledge of any claim adverse to defendant, or to any heir who may have inherited property from his ancestor, &c., or to every case where the plaintiff never had actual possession, though the legal title is in him.

The case of *Robinson vs. Calloway,* 4 *Ark.* 94, explained.

If the defendant has derived possession from a stranger to the plaintiff, and without knowledge of the plaintiff's title, it is not a wrongful or tortious detention.

A tortious *taking* is sometimes established, merely by proving a wrongful detention.

In replevin, in the *detinet*, a *special* request or demand must be averred.

In replevin, the sheriff cannot serve the writ, without first receiving the plaintiff's bond. If he does, he is a trespasser.

And he must return the names of the securities, and their places of residence.

The bond constitutes no part of the record, nor is made such by the sheriff's return.

The want of an affidavit before issuing the writ, could only be taken advantage of by plea in abatement. Though the want of it appeared on the record, this only obviated the necessity of an affidavit verifying the plea, not of the plea itself.

THIS was an action of replevin, determined in the Pulaski Circuit Court, in November, 1841, before the Hon. JOHN J. CLENDENIN, one of the circuit judges. Sarah Barden sued John Pirani in replevin in the *detinet*, for a pony, alleged to be of the value of $50. The declaration ran thus: "For that the said defendant, heretofore, to wit: on the twenty-second day of February, in the year of our Lord one thousand eight hundred and forty-one, to wit: at Little Rock, in the county of Pulaski aforesaid, and within the jurisdiction of the Court aforesaid, detained a certain horse or pony of the said plaintiff," &c. The return of the sheriff is in these words: "This writ came to hand on the 24th day of February, and executed the same at Little Rock, in Pulaski county, on the same day, by taking possession of the within described property, and delivering the same to the within named Sarah Barden, and by reading the contents of the within writ to the within named John Pirani, and delivering him brief notice, stating therein the name of the plaintiff, the name of the plaintiff's attorney, and the time and place where he is required to appear." Signed by the sheriff. The defendant made default, and a judgment was rendered by default, "that the plaintiff have and recover of the defendant the property taken by the writ of replevin in this case, and also the damages sustained by the plaintiff," &c. A writ of inquiry was awarded, and a verdict for one cent damages. The defendant brought error.

*W. & E. Cummins*, for plaintiff in error. At common law, replevin only lay where there was a wrongful taking of personal property, or a wrongful or irregular distress. 1 *Ch. Pl.* 161. *Thomson vs. Butler*, 14 *J. R.* 84. 15 *J. R.* 402. *Gardner vs. Campbell. Panghurn vs. Patridge*, 7 *J. R.* 140. *Hopkins vs. Hopkins*, 10 *J. R.* 379. *Sackridge vs. McDonald*, 10 *J. R.* 263. *Ilsley vs. Stubbs*, 5 *Mass. Rep.* 283, 284. 2 *Wheat. Sel. N. P.* 896, and note " *a*," and authorities there cited. 2 *Saund. Pl. and Ev.* 322. A contrary doctrine was laid down in the case of *Baker et al. vs. Fales*, 16 *Mass. Rep.* 147, but this case is not recognized as law elsewhere.

Our statute, under the title " *Replevin*," gives two distinct remedies. The one, parallel with the remedy by replevin at common law, where

Pirani *vs.* Barden.

there has been a wrongful taking; the other, applicable only where possession has been legally obtained, and there is a wrongful detention, after demand made, as in cases of bailment, &c. *Ch.* 126, *sec's* 1 and 30. The latter remedy is an innovation upon the common law, and must be strictly pursued. *Hughes vs. Martin,* 1 *Ark. Rep.* 386. 6 *Bac. Abr.* 386. *Tit. St.,* 1 *Kent's Com.* 433.

The declaration pursues neither branch of the statute. It is especially defective in not averring a bailment, and demand and refusal to deliver, inasmuch as the fair inference to be drawn from the averment is, that the possession was once legal. *Com. Dig. Tit. Pleader,* 2 *x* 2. *Sackridge vs. McDonald,* 10 *J. R.* 266. *Palmer & Southmayd vs. Ashley & Ringo,* 3 *Ark. Rep.* 75. *Cummins vs. McLain & Badgett,* 2 *Ark. Rep.* 402. *Sevier vs. Holliday,* 2 *Ark. Rep.* 512. 1 *Ch. Pl.* 123, 155. 1 *N. R.* 146. *Willes* 118 *and* 120. 5 *T. R.* 409.

This defect is not cured by the default, because there is a defective title set forth, and the presumption in favor of a verdict at common law does not apply to judgments by default. *Davies vs. Gibson,* 2 *Ark. Rep.* 115. 2 *Tidd's Pr.* 839, 826, 827.

The service of process is sufficient, and the objection is available at this stage. *Rev. St. Ch.* 126, *sec.* 7, 21, 10. *Gilbreath vs. Kuykendall,* 1 *Ark. Rep.* 50.

*Ashley & Watkins,* contra.

*By the Court,* Paschal, J. The only tenable objection raised by the assignment of errors, or by the argument of counsel, relate to the sufficiency of the declaration, and to the sheriff's return.

These objections were once determined by the Court to be invalid. In a case of doubt, this Court would never reverse its own judgment, or change a decision which had been made after due consideration. But where this Court may have committed an oversight, either as to law or facts, justice requires that the error be corrected, while the record is within their control, even at the expense of their own reputation for consistency. That the Court labored under a misapprehension in regard to the law and the facts of the case, is apparent, upon a closer examination of the record. We will, therefore, first di-

rect our attention to the question of the sufficiency or insufficiency of the declaration, in the present aspect of the case.

It may be premised that, at common law, replevin was a remedy which would not lie, unless there was a wrongful *taking*. *Marshall vs. Davis*, 1 *Wend.* 109, and the elementary authorities *passim*. The remedy was almost always concurrent with trespass *de bonis asportatis*. *Hopkins vs. Hopkins*, 10 *J. R.* 369. *Allen vs. Crary*, 10 *Wend.* 349. *Marshall & Davis*, 1 *Wend.* 109.

The authority, therefore, to bring replevin for a detention merely, is derived from our statute on this subject—a statute which, unfortunately, like many others in our compilation, is heterogeneously thrown together, and to understand which correctly, requires the reconciling of provisions greatly disjointed, to say the least of them. The first section would, upon the first glance, seem to embrace all cases " wherever any goods or chattels are wrongfully taken or wrongfully detained." *Sec.* 1 *Rev. St.*, *Ch.* 126, *p.* 659, and the remedy would seem to extend to any person having the " right of possession." These sweeping statutes in derogation of the common law have always been strictly and cautiously construed. This general and seeming universal remedy receives a qualification in the very fourth section, where it is declared, that " no writ of replevin shall be issued, unless the plaintiff file, in the office of the clerk of the Circuit Court, the affidavit of himself, or some credible person for him, stating that the plaintiff is lawfully entitled to the possession; that the same was wrongully taken, or is wrongfully detained by the defendant, and that the plaintiff's right of action has accrued within two years." Here we see that, although the right of possession may be in the party, yet, there is a limitation which may not apply to either trover, trespass, or detinue. There is one limitation to the remedy, both in cases in the *cepit* and *detinet*. There is nothing said of the requisites of the declaration, where the *cepit* is complained of. We therefore presume, that the common law form, as far as the same may be applicable, may well be adopted. But, where the unlawful detention alone is complained of, the remedy, in our opinion, receives some important qualifications, by the 30th section: " Where the original taking of the property, in any action of replevin, is not complained of, but the action

is founded on the wrongful detention of such property, it may be alleged in the declaration, with requisite certainty of time, place, and value, that the defendant received the property which may be set forth in the declaration, from the plaintiff, or some other person, naming him, to be delivered to the plaintiff whenever thereto afterwards requested; but the defendant, although often requested so to do, has not delivered the same to the plaintiff, but refuses to deliver the same."

The adoption of this section of the statute might at first seem to be optional with the pleader; but, upon closer examination, we think that it will be found to explain the character of the cases in which replevin may be brought for the detention merely. Independent of the general rule of construction, that *may* is often interpreted *shall,* and *vice versa,* we find that several of the material parts of a declaration in replevin are herein prescribed: "It may be alleged in the declaration with requisite certainty of time, place, and value, that the defendant received the property, which may be set forth in the declaration," &c. Now, will any one contend, that "requisite certainty of time, place, and value," may or may not be adopted by the pleader? or that the description of the property may or may not be set forth in the declaration? We presume not. Shall we, then, dismember the section, so as to extend the remedy beyond cases where the "defendant received the property from the plaintiff, or some person, (naming him in the pleadings), to be delivered to the plaintiff when thereto afterwards requested?" And shall we or not hold, that the plaintiff is bound to allege "that the defendant, although often requested so to do, has not delivered the same to the plaintiff, but refuses to deliver the same to the plaintiff, and unlawfully detains such property, to the damage of the plaintiff?"

These are questions of grave import, both in principle and practice. The answer to the first inquiry is to determine the propriety of bringing an action of replevin in the *detinet* merely, in any other cases than those of actual or constructive bailment. In other words, whether or not replevin may be brought to try every species of title to personal property, regardless of the manner of obtaining possession by the defendant. That the thirtieth section merely extends to cases of bail-

ment, or actual delivery by the plaintiff, or some other person for him, to the defendant, with an express or implied contract to return the property on request, there can be no doubt.    Thus, cases of deposite, hiring, lending, pawn, and pledge, are doubtless embraced; and this, whether the delivery was made by the plaintiff, or some other person in his behalf.    But that the remedy extends to cases of an innocent purchaser, who bought for a valuable consideration, without knowing of any claim adverse to the defendant, or to an heir who may have inherited property of his ancestor, who held under an imperfect title, or to every case where the plaintiff never had actual possession of the property, although the legal title is in him, we are far from being prepared to decide.    Of this there is certainly a very strong *quære* in the mind of the Court.    Possession lawfully obtained, other than in cases of bailment, is *prima facie* evidence of title against strangers; and he who contests such possession, should produce other evidence of title than his own affidavit, before divesting the defendant of his possession. The rule is very plain, and well settled by decisions, where there has been a tortious taking.    There the defendant is not permitted to enjoy his possession, until the title is litigated, unless the plaintiff has acquiesced in the wrong for two years.    So, in the class of cases embraced in the 30th section, the possession of the defendant, although lawful, yet the detention of that possession, after request, becomes wrongful and tortious.    It is but right that he who would contest his bailor's title, should surrender the possession until the case is litigated; particularly, where the defendant is secured by the bond of the plaintiff.    The defendant's plea, that he does not detain the goods and chattels, or any part thereof, as alleged, not only puts in issue the detention, but the property of the plaintiff; and, by giving notice, he may set up anything which would be a bar to the plaintiff's action, including, we presume, all qualified as well as absolute claims.    See *sections* 34, 35, *Rev. St.*, *p.* 664.    *Robinson vs. Calloway*, 4 *Ark. Rep.* 95.

In New-York, there are legislative regulations on the subject; and we believe that there is a division by statute of replevin, into the *cepit* and *detinet.*    And in that State it has been held, that replevin will not lie for an illegal *detention* of property, where the party comes to

the possession by delivery, from a person having a special property. *Marshall vs. Davis*, 1 *Wend.* 109. This was an action of the *cepit et detinet.* The defendant pleaded *non cepit*, and property in himself. The plaintiff proved delivery of the horse in question to one Vermilyea, to use for the keeping, and be delivered on demand; that Vermilyea exchanged the horse in question with the defendant. He proved demand of the horse of the defendant, and a refusal to deliver him up. The defendant moved for a peremptory *non suit*, which is allowed by the practice of New-York. SAVAGE, C. J., in a very able opinion, reviews the cases of *Panghurn vs. Patridge*, 7 *J. R.* 143; *Thompson vs. Button*, 14 *J. R.* 87; *Gardner vs. Campbell*, 15 *J. R.* 402; *Mills vs. Martin*, 19 *J. R.* 31, 2; *Clarke vs. Skinner*, 20 *Johns. Rep.* 467, and said that it was not then an open question; that replevin would not lie where the defendant had derived possession from a third person, and where he was not proven to have knowledge of plaintiff's title. This was the doctrine at common law. 1 *Tidd's Pr.* 7. 1 *Ch. Pl.* 118. *Selwyn's N. P.* 1110. In the case of *May vs. Head*, 1 *Mason's Rep.* 322, STORY, J., says: "At common law, a writ of replevin never lies, unless there has been a *tortious* taking, eithe roriginally, or by construction of law, by some act which makes the party a trespasser *ab initio.* In case of bailment or rightful possession of the property, replevin is certainly not the proper remedy at common law, but detinue or trover lies in such case, where there is an unjustifiable detention or conversion. *Non cepit* puts in issue the fact of an actual taking; and, unless there be a wrongful taking from the possession of another, it is not a taking within the issue."

The doctrine of the Supreme Court of Massachusetts is admitted to be more liberal in favor of the action. See *Baily vs. Stubbs*, 5 *Mass.* 284. *Badger vs. Phinney*, 15 *Mass.* 349. *Baker vs. Fales*, 16 *Mass. Rep.* 147.

The decisions of this Court for the unlawful taking and detention of goods have, perhaps, been quite as liberal as the decisions in Massachusetts, or elsewhere. *Gray et al. vs. Nations*, 1 *Ark.* 557. *Wilson vs. Royston*, 2 *Ark.* 315. These were decisions made before the passage of our Revised Statutes; at least, were not affected by them. The case of *Robinson vs. Calloway*, 4 *Ark. Rep.* 94, was decided af-

ter the passage of the Revised Statutes, and necessarily overruled the principle decided in *Wilson vs. Royston*, the latter decision being in conformity to the Revised Statute which declares the effect of the plea. The case of *Robinson vs. Calloway*, was an action in the *detinet*, but the sufficiency of the declaration was never questioned; nor did the Court give any construction to the 30th section of the statute. The language, in the first sentence of this decision, unless we view it as qualified by the 4th and 30th sections of the statute, is, perhaps, calculated to mislead those who do not give to the word *wrongful* its technical legal sense, when applied to a *taking* or *detention*.

The question, then, of a sufficiency of a declaration, without an averment that the plaintiff, or some other person, delivered the property to the defendant, to be delivered to the plaintiff on request, again recurs. And we do not see how we can escape the conclusion that such averment is necessary, where the party relies on a wrongful *detention* merely; for, it would seem to us that, if the defendant has derived possession from a stranger to the plaintiff, and without knowledge of the plaintiff's title, such possession is as far from being a wrongful or tortious detention as it is from a tortious taking. Even the *tortious taking* has sometimes been established by merely proving the *detention;* because, a person lawfully in possession may frequently become, by his acts, a trespasser *ab initio*, the trespass extending back to the time of deriving possession by relation. Viewing the question from this point, we apprehend that all the decisions made under the common law will be found reconcilable with the general principle that there must have been a tortious *cepit et asportavit*.

The thirtieth section of our statute is intended to embrace the whole class of bailments, where the defendant holds possession after request. And, without deciding whether or not this objection, where there had been a good service of the writ, can be taken advantage of by error, after judgment by default and writ of inquiry found, we think it proper to remark that, not only should there be an averment of such delivery, but also of a special request or demand for the return of the property. A different rule of construction would involve the absurdity of subjecting every bailee to an action of replevin, before demand of the property, or refusal to deliver the possession. For the general doctrine

on this subject, see the case of *Martin & Van Horn vs. Webb*, decided at the present term of this Court. The principles in relation to special requests on bailees, and the time of pleading, applies as well to one form of remedy as another.

We have thought proper to make these remarks on the subject of the action, although the judgment of the Circuit Court must be reversed for insufficiency of the sheriff's return, to authorize a judgment by default. The 7th section of the statute about replevin declares, that "such writ shall not be executed in any case, unless the plaintiff, or some other person in his behalf, shall execute a bond to the sheriff, or other officer, with sufficient security, to be approved by such sheriff or other officer, in a sum at least double the value of the property specified in the writ, which value shall be ascertained by the oath of one or more witnesses, to be sworn and examined by the sheriff, or other officer." And the 21st section of the statute directs, that "the sheriff shall return the writ at or before the return day thereof, and shall annex thereto the names of the persons who were securities in the bond taken by him from the plaintiff, with the places of their residence." The taking of the bond is a pre-requisite to the serving of the writ; and should the sheriff serve the writ without such bond, he would be a trespasser. *Martin vs. Van Vort*, 19 *Wend.* 283. *Westervelt vs. Bell*, 19 *Wend.* 531. *Hawley vs. Bates*, 19 *Wend.* 632. *Smith vs. McFall*, 18 *Wend.* 521. *Wilson vs. Williams*, 18 *Wend.* 581.

These decisions seem to settle, that the sheriff cannot execute the writ without taking bond and securities; and it is even said, that if he takes the bond with only one security, he does it at his peril. *Kesler vs. Hays*, 6 *Wend.* 616. *Smith vs. McFall*, 18 *Wend.* 521. The same reason for returning the names of the securities and their places of residence, prevails, in this State, which operates in New-York, viz: that the plaintiff has a right to except to the sufficiency of the securities; and, if the objection be sustained, the plaintiff, upon failure to perfect the security, shall suffer a discontinuance. *Sec's 25 and 26, Rev. St., p. 663. Wilson vs. Williams*, 18 *Wend.*, above cited, (581.)

We have not overlooked the fact, that a bond from the plaintiff and securities is copied in the transcript of the record; but it forms no part thereof, according to the principle settled in the case of *Pike et al. vs.*

*Lenox*, 2 *Ark. Rep.* 14, and many other cases decided by this Court. The bond does not, necessarily, constitute a part of the record, nor can it be made such by the sheriff's return. The sheriff's return was, therefore, clearly insufficient to authorize a judgment by default.

We unintentionally omitted to remark upon the point relative to amending the affidavit. The want of an affidavit before the issuance of the writ, could only properly have been taken advantage of by plea in abatement; and the error appearing on the record, waived the necessity of an affidavit verifying the truth of the plea, but did not waive the necessity of the plea. The amendment was, therefore, wholly unnecessary; but, if a clerical misprision, the date might have been proved, at any time. The objection, that the sheriff's return bears no date, is not true in point of fact. The objection, that the bond is payable to the defendant below, cannot be here considered, as the bond is no part of the record.          Judgment reversed.